# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7205 | **DATE** | 2/26/2002 |
| **CASE TITLE** | Wesley A. Butler vs. Larry G. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, plaintiff's motion for summary judgment [16-1] or remand [16-2] is denied, defendant's motion for summary judgment [18-1] is granted and the decisions of the ALJ and the Appeals Board are affirmed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 7 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/26/2002 | |
| | | courtroom deputy's initials KF | date mailed notice KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESLEY A. BUTLER | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) 00 C 7205 |
| | ) |
| LARRY G. MASSANARI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The plaintiff, Wesley A. Butler ("Butler") has brought a motion for summary judgment seeking judicial review of the final decision of defendant Massanari,[1] who denied plaintiff's claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act") 42 U.S.C. § 416(i), 423(d), 1382c; 20 C.F.R. §§ 404, 1520(f), 416.920(f). Defendant Massanari has filed a cross motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ") who originally heard the case, and the Appeals Board which reviewed the ALJ's decision. We have jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g) and for the following reasons we affirm the decisions of the ALJ and the Appeals Board and grant defendant's motion for summary judgment.

DOCKETED

FEB 27 2002

---

[1] At the time the complaint was filed, the Commissioner of Social Security was William Halter.

## Procedural History

Butler filed for DIB on December 12, 1996 asking for a period of disability dating back to July 18, 1996 (R. 94-96), which was consolidated with his request for SSI (R. 275-77). His claims were denied initially and then again after his request for reconsideration. (R. 21, 7). On August 4, 1998, Plaintiff participated in a hearing before ALJ Peter Caras regarding the denial of his claim for benefits. (R. 27). On November 18, 1998, Caras issued a written opinion denying his claim. (R. 21). In his opinion, Caras applied the five step sequential evaluation process required by 20 C.F.R. 404.1520 and 416.920 (R. 14), and concluded that Butler was not disabled pursuant to the Social Security guidelines, and thus not entitled to benefits. (R. 20-21). Butler then appealed the decision to the Appeals Council, which denied his request for review on July 8, 2000. (R. 5, 7). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. *See Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).

## Plaintiff's Medical Examinations

On July 12, 1996, Butler bumped his knee on the door handle of a tractor-trailer. (R. 207). The following day, he was treated at the Saint Margaret Mercy Health Care Center's emergency room after complaining of pain around his left kneecap. (R. 207). X-rays of the knee were normal and revealed no evidence of fracture, dislocation or significant bone abnormalities. (R. 209). The ER physician noted slight swelling of the left knee and told Butler he had a bruise and should take Motrin. (R. 210). Butler underwent another X-ray on July 26, 1996 which revealed an ununited anterior tibial turbercle, but no fractures or other abnormalities. (R. 213).

James P. Elmes, M.D. examined Butler on July 31, 1996 and diagnosed inflammation of the synovial membrane and inflammation of the tendon sheath of the left knee. (R. 253). Butler was complaining of left knee pain, swelling, clicking and occasional buckling and locking of the knee. (R. 253). Dr. Elmes instructed Butler to rest his knee for one week, use a knee immobilizer brace and apply cold packs. (R. 253). Dr. Elmes also prescribed an anti-inflammatory drug and gave Butler samples of a non-narcotic pain reliever. (R. 253).

In August, 1996, because Butler was still having left knee pain, Dr. Elmes instructed him to continue using cold packs and recommended an injection directly into the joint. (R. 251). Trigger point injections and pain medication did not alleviate the pain in Butler's left knee. (R. 216). On January 22, 1997, Dr. Elmes performed arthroscopy of the left knee. (R. 216-18). The post-operative diagnosis included chondromalacia (softening of the articular cartilage) of the left knee and a torn medial meniscus. (R. 218, 221). By April 1997, Butler had developed recurrent left knee pain and also complained to Dr. Elmes of right knee and back pain. (R. 240).

In May, 1997 Butler reported increased left knee pain to Dr. Elmes and received trigger point injections. (Tr. 239). On May 18, 1997 he was treated in the Saint Margaret Mercy Health Care Center emergency room for uncontrolled hypertension and chest pain. (R. 224).

On July 26, 1997, Ronald J. Rogers, Ph.D, a clinical psychologist, examined Butler at the behest of SSA. (R. 264-66). Dr. Rogers found Butler to be a thoughtful and intelligent person whose behavior was marked by a depressive mood. (R. 266). Dr. Rogers found that Butler's speech was clear, relevant and coherent and that his

3

sensoruim and mental capacity were intact. (R. 265-66). Butler answered 86% of the evaluation questions correctly. (R. 265). He answered factual questions correctly, but had difficulty with abstract reasoning, which is often an indicator of depression. (R. 265). Butler also was able to recite the precise directions to his office which he had received a few days earlier and could repeat five digits forwards and four digits backwards. (R. 265). After his examination, Dr. Rogers concluded that Butler's depression would not preclude work activities; in fact he found that some work activities outside of the home would probably improve his mental health. (R. 266).

On August 11, 1997, Kay Bienemann, Ph.D., Butler's treating psychologist, completed a psychological report for the Bureau Of Disability Determination Services. (R. 255-258). During the evaluation, Butler appeared dignified and appropriate for the situation, although he was sad and tearful at times. (R. 256). In her report Dr. Bienemann found that Butler had good abstract thinking skills and judgment and could follow and understand instructions. (R. 257). She concluded that Butler was depressed as a result of his physical medical condition and that his depression could cause decreased concentration which would interfere with his ability to carry out directions and remember tasks. (R. 257). Dr. Bienemann noted, however, that Butler was likely to get along well with his supervisors and peers most of the time and recommended outpatient psychotherapy once a week. (R. 257).

On August 12, 1997, Walter M. Gerhold, M.D., reviewed medical reports from Dr. Elmes and examined Butler himself to complete a report for the Bureau of Disability Determination. (R. 259). Dr. Gerhold noted that in addition to his left knee problems, Mr. Butler began experiencing right knee pain in January 1997 which was never really

4

examined. (R. 259). Dr. Gerhold found that Butler had a full range of motion in his right knee and that the knee appeared normal. (R. 261). However, knee jerks could not be elicited in either knee. (R. 261). Butler also complained of a history of back problems, but Dr. Gerhold found the details very vague. (R. 259). Butler had some limitation of motion in his lumbar spine, but no muscle atrophy on the lower extremities. (R. 261). Back X-rays showed no bony abnormalities, normal alignment of the vertebrae, and well maintained vertebral heights and disc spaces. (R. 260-62). Butler's left knee was not swollen and the x-ray showed slight demineralization, but well maintained joint space and good bone density. (R. 262). Dr. Gerhold noted that Butler walked with a limp, a brace and a cane. (R. 261).

On September 16, 1997, James W. Ryan, M.D., examined Butler. (R. 267). Dr. Ryan reported that Butler's knee was stable. (R. 267). Dr. Ryan performed various movement and range of motion tests on Butler's knees and noted that the "Apley, Lachman, Drawer Sign, Pivot Shift and Faber tests were negative." (R. 267). However, Butler was not able to perform the McMurray test and Dr. Ryan noted some tenderness in his left knee. (R. 267). Dr. Ryan opined that Butler would not be able to return to work at that time because sitting for long period of time would be difficult. (R. 268).

**Legal Analysis**

Butler raises two issues on appeal. First, he contends that the ALJ's decision to deny his application for SSI and DIB at the fifth step in the Commissioner's sequential evaluation is not supported by substantial evidence and contains an error of law. Specifically, Butler argues that the ALJ impermissibly acted as an amateur doctor in assessing his mental impairment and that the assessment was deficient and not supported by substantial evidence[2]. Next, Butler contends that the ALJ's determination that his "alleged pain and functional limitations were not fully credible" is legally deficient.

First we will consider Butler's claim that the ALJ impermissibly acted as an amateur doctor and that his assessment of Butler's mental impairment is deficient and not supported by substantial evidence. The Act sets forth a five step process to be used to determine whether an individual is disabled, and thus unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental ailment. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). An individual is considered disabled only if he is neither able to perform any of his previous work or any other work existing in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e),(f), 416.920(e)(f).

In making his determination, the ALJ applied the standard five step process set forth in the regulations, which require him to evaluate, in sequence; 1) whether the claimant is currently [un]employed; 2) whether the claimant has a severe impairment; 3)

---

[2] Butler does not object to the ALJ's finding regarding his physical impairments and thus we will not review them.

whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1 ("Listing"); 4) whether the claimant can perform [his] past relevant work; and 5) whether the claimant is capable of performing work in the national economy. *See, Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) citing *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001). Under the five part sequential analysis, "a[n] affirmative answer leads to either the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a finding that the claimant is not disabled." *Zalewski v. Heck*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

The inquiry the Court must undertake when asked to review an ALJ and Commission decision is whether that decision is supported by substantial evidence. *See, e.g., Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Carter*, 55 F.3d 300, 305 (7th Cir. 1995) citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

In undertaking the five-step process, the ALJ first determined that Mr. Butler was not currently gainfully employed. Next, the ALJ determined that Mr. Butler suffered from the severe impairments of "severe hypertension, back pain, a left knee injury, and

7

depression." (R. 20). The ALJ did not find for Mr. Butler at the third stage because he found that his various impairments or combination thereof did not meet any of those in the Listing. (R. 16). At step 4, the ALJ found that Butler retained the residual functional capacity (RFC) to perform a limited range of sedentary work (R. 18,20) and that he could not perform his past work as a crane operator, small products assembler, conveyor operator and stock clerk. (R. 15, 19). The ALJ did not find for Butler at the fifth stage of consideration because he found that Butler was not disabled because he could perform a significant number of sedentary jobs with nonexertional limitations in the economy considering his RFC in conjunction with his age, education and work experience. (R. 19-20). 20 C.F.R §§ 404.1520(f), 416.92(f).

In determining Butler's RFC and what jobs he was qualified to perform, the ALJ found that Butler was suffering from depression which limited him to unskilled work with mild limitations regarding interactions with people and occasional deficits in concentration and attention, but did not preclude all employment. (R. 20). Butler contends that the ALJ's determination as to the extent of his depression and its effect on his ability to work is mere conjecture and is not supported by substantial evidence. He argues that the record does not support the ALJ's finding and that the ALJ simply relied on his own subjective psychiatric opinion as to the extent of Butler's depression and in so doing committed legal error. Butler also argues that the ALJ ignored some medical evidence in the record and should have obtained additional evidence in order to make a more informed decision.

When the ALJ denies benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 867 (7th Cir.

2000). An ALJ does not need to "provide a complete written evaluation of every piece of testimony and evidence." *Diaz v. Carter*, 55 F.3d 300, 306 (7th Cir. 1995). If the court can "track the ALJ's reasoning and be assured that the ALJ considered the important evidence", the ALJ has met the minimal articulation standard. *Diaz v. Carter*, 55 F.3d at 308 quoting *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ in this case has built such a chain of evidence to explain why Butler is not disabled. We can track his reasoning and are assured that he considered the important evidence.

After reviewing the entire record and listening to testimony, the ALJ determined that Butler was depressed but could still perform unskilled work, with mild limitations regarding interactions with people and occasional deficits in concentration and attention. (R. 20). In reaching this conclusion, the ALJ relied on the medical evidence supplied by Dr. Bienemann, Butler's treating psychologist, and Dr. Rogers, a psychologist asked to evaluate Butler at the behest of the SSA. This was the only mental medical evidence in the record. Both Doctors submitted psychological reports. The ALJ referred to both reports in his holding and noted that neither doctor found that Butler's depression precluded him from working. The ALJ listed the parts of the reports that supported his finding and minimally explained the parts that did not support his finding.

The ALJ noted that Dr. Bienemann found Butler tearful at times, but that he was also relevant, polite and did not have hallucinations, delusions or confusion. The ALJ referred to Dr. Bienemann's findings that Butler could understand directions, but that his decreased concentration would interfere with his ability to carry out directions. The ALJ took Dr. Bienemann's findings into account and held that Butler was limited to skilled work that did not involve complex or detailed instructions and that allowed for occasional

9

deficiencies in concentration and attention. The ALJ also noted Dr. Rogers' report, which found that Butler's speech was clear, relevant and coherent and that he was able to repeat five digits forward, four digits backward and recall the route to Dr. Rogers' office, showing that Butler could understand and follow directions.

After reviewing the record, we find that the ALJ did not fail to consider any information in the record relevant to Butler's depression and ability to work. Although the ALJ did not mention the testimony of Butler's wife regarding Butler's behavior at home,[3] we find that her testimony is consistent with the information Butler himself provided to the psychologists. Moreover, an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence. See Diaz v. Carter, 55 F.3d at 307.

Furthermore, the ALJ considered the Daily Activities Questionnaire Butler filled out in which he said that he had withdrawn from his friends and family to a degree, but could still interact appropriately when he chose to. The ALJ also noted that Butler did not get upset if others criticized him and was not afraid of other people. (R. 18). Additionally, the ALJ recognized Butler's deficiencies in concentration and attention. The ALJ noted that Butler reported trouble concentrating and thinking which negatively affected his ability to read and engage in other activities. (R. 18). The ALJ took all of this evidence into account when he found that Butler could function in a work setting with mild limitations regarding interactions with others and that he could perform unskilled work with occasional deficits in concentration and attention.

---

[3] For example, Mrs. Butler testified that her husband spent a lot of his time in bed, that he did not go out very often, and that he no longer helped around the house. (R. 53)

10

The case at bar is easily distinguishable from Wilder v. Chater, 64 F.3d 335 (7th Cir. 1995), the case relied upon by Butler. In Wilder, the judge discounted the only medical evidence in the case and made a decision that was contrary to such evidence. Id. at 337. The sole psychologist to examine the plaintiff found that she was disabled in 1986 due to depression. Id. The ALJ ignored the evidence and instead found that the plaintiff was not disabled. Id. The ALJ did not rely on any medical evidence in the record to reach his conclusion. Conversely, in the case at bar, the ALJ did not discount any medical evidence. He relied on both psychologists' reports – which were consistent with each other – and made his RFC finding based on their content.

Butler also contends that the ALJ should have sought more evidence before making his findings. Butler suggests that the two psychologist's reports were not sufficient and that the ALJ should have called upon the services of another mental health specialist. However, it was the plaintiff's burden to prove the limitation resulting from his impairment. See 20 C.F.R. §§ 404.1512(a), 416.912(a). Butler did not request that the ALJ obtain additional evidence at the hearing and cannot do so now. "It is always possible to do more. How much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment." Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993). The ALJ had consistent reports from Butler's treating psychologist and an examining psychologist. Neither report stated that Butler's depression precluded work. The ALJ did not error by not requesting more medical evidence.

Butler's second issue on appeal challenges the ALJ's determination that his "alleged pain and functional limitations were not fully credible, as they were not

supported by the medical evidence or relevant credibility factors." Butler argued that the ALJ's decision was legally deficient.

An ALJ's credibility determination will not be disturbed unless it is patently wrong. *Diaz v. Carter*, 55 F.3d at 308. The ALJ's determination or decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the record, and must be sufficient to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for the weight." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) quoting Social Security Ruling 96-7p.

In the instant case, the ALJ's credibility determination was not patently wrong because it contained specific reasons for his findings on credibility and was supported by the evidence in the record. First, the ALJ found inconsistencies between Butler's complaints of back pain and the medical evidence. The ALJ noted that Butler had complained of back pain for many years but there was no evidence of a specific injury to the back and no pathology, including disk herniation or spinal stenosis, had been found in his back. (R. 15-16). The ALJ also noted that Dr. Elmes reported some tenderness in the back in April 1997, along with sensory loss in the left great toe and some limited range of motion. Then the ALJ referred to Dr. Gerhold's finding that flexion of the spine was limited, but there was no evidence of motor, sensory or reflex loss apart from absent knee jerks. (R. 16). Lastly, the ALJ stated that Butler had not gone to the emergency room complaining of back pain. (R. 16). After evaluating the evidence, the ALJ found that Butler's back pain was not severe pain that would prevent him from performing any work activity.

The ALJ continued by evaluating the extent of Butler's knee injury and associated pain. Butler complained of pain in both his right and left knees with the most pain in his left knee. The ALJ evaluated the various medical records submitted to the court and concluded that Butler's knee injury and pain did not prevent him from working. The ALJ noted that in August, 1997, Dr. Gerhold found some limitation in the left knee, but full range of motion in the right knee. There was no swelling in either knee and x-rays showed that the left knee was essentially normal. Dr. Ryan found that there was a slight effusion of the left knee, but all the standard tests of the knee were negative. The ALJ evaluated all the evidence and determined that it did not preclude Butler from working but did limit his ability to sit and stand while working and ordered that he only perform jobs that allowed him to sit and stand as needed.

Next the ALJ noted that at the hearing Butler testified that he had side effects from the medication that he was taking, but no side effects were ever reported in any medical records. Butler testified that he experienced dizziness, headaches, constipation, diarrhea and vomiting, but none of his doctors recorded those complaints. Apparently Butler never reported these side effect to his doctors. The ALJ also noted that Butler had not been to the hospital or emergency room for pain since his arthroscopic surgery in early 1997. The ALJ further noted the conspicuous absence of the usual signs of severe pain in the record. These signs include abnormal weight loss, muscle atrophy or problems sleeping or concentrating secondary to pain. (R. 16).

Lastly, the ALJ noted that there was evidence that Butler was more active than he admitted to being. At the hearing Butler testified that his activities are limited and that he spends much of his time sleeping and watching TV. The ALJ cited Dr. Elmes' progress

13

notes which referenced Butler's schedule in April 1998, noting that he was busy "with interviews, church and dinner on occasion" and that he was "progressing well with a school program". The ALJ's credibility evaluation was not patently wrong. He gave specific reasons for his finding on credibility, and these findings were supported by the evidence in the record.

The case at bar is distinguishable from Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001), the case relied on by Butler. In Zurawski, the ALJ made a cursory and unsupported statement that the plaintiff's complaints of disabling pain were "not entirely credible due to inconsistencies with the objective medical evidence." In the instant case the ALJ spent two pages elaborating on why Butler's complaints of pain were not entirely credible, based on specific evidence in the record. The ALJ's credibility finding was fully substantiated.

Therefore, we affirm the decision of the ALJ and the Appeals Board and grant defendant's motion for summary judgment. It is so ordered.

Michael T. Mason
United States Magistrate Judge

Date: February 26, 2002

14